**Jane DOE, et al., Plaintiffs,**

v.

**MADISON SCHOOL DISTRICT NO. 321; et al., Defendants.**

**No. CV 90–518–E–EJL.**

United States District Court, D. Idaho.

April 30, 1997.

James B. Lynch, Kirtlan G. Naylor, Lynch Moore Baskin & Parker, Boise, ID, Scott W. Marotz, Stephen McGrath, McGrath Baker & Marotz, Idaho Falls, ID, for defendant.

Stephen L. Pevar, American Civil Liberties Union, Denver, CO, D. Bernard Zaleha, Boise, ID, for plaintiffs.

## MEMORANDUM DECISION AND ORDER

LODGE, District Judge.

The sole issue before the Court is whether the Madison School District's policy concerning graduation ("Graduation Policy" or "Madison District's Policy"), which allows the student invited to participate in the graduation program to give an uncensored presentation which may include an address, poem, reading, song, musical presentation, prayer or any other pronouncement of the student's choice, violates the Establishment Clause. The Graduation Policy at issue states:

The school administration may invite graduating students to participate in high school graduation exercises according to academic class standing. A minimum of four (4) students may be asked to address the graduates at the graduation exercises. Any student who, because of academic class standing, is requested to participate may choose to decline the invitation.

The school administration shall not censor any presentation or require any content, but may advise the participants about appropriate language for the audience and occasion. Students selected to participate may choose to deliver an address, poem, reading, song, musical presentation, prayer or any other pronouncement of their choosing.

The printed program for the commencement exercises shall include the following paragraph:

"Any presentation by participants of graduation exercises is the private expression of the individual participants and does not necessarily reflect any official position of Madison School District # 321, its Board of Trustees, administration or employees or indicate the views of any other graduates.

"The Board of Trustees of the Madison School District # 321 recognizes that at graduation time and throughout the course of the educational process, there will be instances when religious values, religious practices and religious persons will have some interaction with the public schools and students. The Board of Trustees, however, does not endorse religion, but recognizes the rights of individuals to have the freedom to express their individual political, social or religious views, for this is the essence of education."

(Docket No. 108, Appendix A.)

The Court would like to note at the outset that this case was a very difficult and troubling case for the Court. The law regarding the constitutionality of graduation prayer or a school district's policy concerning graduation ceremonies is far from being clear and requires a fact intensive analysis. Although the Supreme Court has rendered an opinion on the subject, the circuit and district courts have not consistently interpreted or applied its holding, and the Supreme Court has not granted certiorari to clarify its holding. Furthermore, the only Ninth Circuit opinion specifically to address graduation prayer was vacated as moot by the Supreme Court. To further complicate the issue, the policies regarding student presentations at a graduation ceremony vary widely. Finally, this case involves the facial challenge to an atypical school district graduation policy that does not involve or mention a formal state-sponsored Invocation or Benediction exercise. Rather, the policy is neutral regarding religion. The Court notes that the decision is confined to its facts and recognizes the result could be different if the facts are slightly altered.

For the reasons stated herein, the Court finds the Graduation Policy on its face does not violate the Establishment Clause. The Court's decision is based on two basic premises. First, there is a crucial difference between government speech endorsing religion and private speech endorsing religion. *Board of Educ. of Westside Community Sch. v. Mergens,* 496 U.S. 226, 250, 110 S.Ct. 2356,

2372, 110 L.Ed.2d 191 (1990); *Ceniceros v. Bd. of Trustees of San Diego Unified Sch. Dist.,* 106 F.3d 878 (9th Cir.1997). Second, the Supreme Court did not ban all prayer at high school graduation ceremonies by its decision of *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). Applying these principles, the Court finds the facts presented in this matter are distinguishable from the facts in *Lee* and the policy satisfies the three-prong test established in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Religion is neither proscribed or prescribed by the State under this Graduation Policy.

## FACTS AND PROCEDURAL HISTORY

On November 16, 1990, Plaintiffs filed a complaint (Docket No. 1) asking the Court to declare the Madison District's Policy concerning graduation unconstitutional and enjoining the school district from allowing any form of prayer at graduation. Additionally, Plaintiffs sought an injunction to prohibit the coaches from directing a prayer prior to athletic events.[1] Plaintiffs seek no monetary damages.

On April 25, 1991, the Court granted Plaintiffs' motion to stay the case pending the decision of the United States Supreme Court in *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). (Docket No. 29.) On August 12, 1991, the action was administratively terminated without prejudice. (Docket No. 30.) After being reopened, the case was once again administratively terminated pending final disposition of *Harris v. Joint Sch. Dist.,* 41 F.3d 447 (9th Cir.1994), *vacated as moot,* 515 U.S. 1154, 115 S.Ct. 2604, 132 L.Ed.2d 849 (1995). (Docket Nos. 44, 72.) On April 9, 1996, the case was reopened, and the Court determined Plaintiffs had standing to continue the lawsuit. (Docket Nos. 99, 104.)

On July 22, 1996, Plaintiffs filed a motion for summary judgment on the issue of whether the Graduation Policy was facially unconstitutional. On August 19, 1996, Defendants filed a response, and on August 30, 1996, Plaintiffs filed a reply. On March 3, 1997, the Court held oral arguments on the motion for summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury

---

1. The Plaintiffs did not brief this claim in their motion for summary judgment.

2. *See also,* Rule 56(e) which provides, in part:
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings,

but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed.R.Civ.P. 56(e).

or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the Court must view all of the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hughes v. United States,* 953 F.2d 531, 541 (9th Cir.1992).

The Court may enter summary judgment in favor of the non-moving party on its own initiative. In *Portsmouth Square v. Shareholders Protective Comm.,* 770 F.2d 866, 869 (9th Cir.1985), the Court held:

Under certain limited circumstances a district court may issue summary judgment on its own motion. For example, *sua sponte* summary judgment is appropriate where one party moves for summary judgment and, after the hearing, it appears from all the evidence presented that there is no genuine issue of material fact and the *non-moving* party is entitled to judgment as a matter of law. *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982).

## ANALYSIS

### A. *Lee v. Weisman*

The crux of Plaintiffs' argument is that all prayer at a high school graduation ceremony is unconstitutional, because the school inherently retains control over the graduation ceremony by paying the rent for the facility, the printing of the program and any other costs associated with the commencement ceremony. Plaintiffs rely on *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), to support their position. The Court disagrees that *Lee* should be applied so broadly. *See Adler v. Duval County Sch. Bd.,* 851 F.Supp. 446, 456 (M.D.Fla. 1994).

In *Lee* the Supreme Court found that the school district's involvement with the graduation prayer was so pervasive that the prayer constituted a state-sponsored religious activity. The school principal decided to include prayer in the graduation ceremony, chose the clergyman who delivered the prayer, and recommended the content of the prayer to ensure that the prayer was nondenominational. 505 U.S. at 587–88, 112 S.Ct. at 2655–56. Given the degree of involvement by the school administration, the Supreme Court found that the students could reasonably perceive that the school district was endorsing religion. *Id.* at 593, 112 S.Ct. at 2658. The Supreme Court held the state officials' deliberate and extensive participation in the graduation prayer coupled with the student's obligatory attendance at his or her graduation ceremony violated the Establishment Clause. *Id.* at 599, 112 S.Ct. at 2661.

Had the Supreme Court intended its holding in *Lee* to ban all prayers at a high school graduation, the only required rationale would be that school administrators necessarily control the graduation ceremonies such that any prayer would be a state-sponsored religious event. Instead, the Court's rationale focused primarily on the factually dependent argument that the school's involvement in initiating and directing the prayer was so pervasive that the reasonable student would believe the school was endorsing religion. The Supreme Court early in its opinion indicated the fact-intensive, limiting nature of the holding:

These dominant facts mark and control the confines of our decision: State officials direct the performance of a formal religious exercise at promotional and gradua-

tion ceremonies for secondary schools. Even for those students who object to the religious exercise, their attendance and participation in the state-sponsored religious activity are in a fair and real sense obligatory . . . .

*Id.* at 586, 112 S.Ct. at 2655. In fact Justice Souter, joined by Justice Stevens and Justice O'Connor, stated in his concurring opinion that "[i]f the State had chosen its graduation day speakers according to wholly secular criteria, and if one of those speakers (not a state actor) had individually chosen to deliver a religious message, it would have been harder to attribute an endorsement of religion to the State." *Id.* at 630 n. 8, 112 S.Ct. at 2677 n. 8.

The Court has found only one district court that has applied *Lee* as broadly as Plaintiffs urge in a graduation prayer case. *Gearon v. Loudoun County Sch. Bd.,* 844 F.Supp. 1097, 1099 (E.D.Va.1993). The remaining federal courts have, instead, recognized that *Lee's* holding is fact intensive and either distinguished or analogized the facts of *Lee* to the facts in their case. *See ACLU v. Black Horse Pike Reg'l Bd. of Educ.,* 84 F.3d 1471, 1478–83 (3rd Cir.1996); *Jones v. Clear Creek Indep. Sch. Dist.,* 977 F.2d 963, 970–72 (5th Cir.1992)("*Jones II* "); *Adler,* 851 F.Supp. at 456. The Court is more persuaded by the analysis of *Lee* as articulated by the majority of the courts.

The Court finds further support for its conclusion that the *Lee* holding is not so broad as to eliminate all prayer by looking at the procedural history of *Jones v. Clear Creek Independent School District,* 977 F.2d 963 (5th Cir.1992)("*Jones II* "). In *Jones v. Clear Creek Independent School District,* 930 F.2d 416 (5th Cir.1991) (*Jones I* ), the Fifth Circuit applied the *Lemon* test and found a resolution that allowed the senior class to choose whether to have an invocation and/or benediction at graduation did not violate the Establishment Clause. The court deter-

mined that the resolution had a secular purpose of solemnization, that the resolution's primary effect was to impress upon the attendees the important social significance of graduation rather than to endorse religion, and that the school district did not excessively entangle itself with religion because the resolution required the prayer to be nonsectarian and nonproselytizing. *Jones II,* 977 F.2d at 964–65. The United States Supreme Court vacated the judgment and remanded the case for further consideration in light of *Lee* which was only recently decided. Upon reconsideration, the Fifth Circuit distinguished *Lee* on its facts and once again found the resolution satisfied the three-part *Lemon* test. *Id.* at 965. The Supreme Court thereafter denied certiorari. 508 U.S. 967, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993).[3]

Having rejected Plaintiffs' arguments that *Lee* bans all prayer at graduation, the Court must determine whether Madison District's Policy is unconstitutional on its face in light of *Lee.* The Court finds *Lee* factually distinguishable. The Madison District's Policy keeps state-involvement to a minimum. The Graduation Policy dictates that school officials choose at least four students according to class standing[4] who are responsible for the major portion of the ceremony. These students select the theme for their graduation, how each will participate in the ceremony and in what order. (Ex. A, Resp. Mot. Summ. J. at 2–3.) The Graduation Policy provides that those chosen students may give a speech, sing a song, recite poetry, give a prayer or whatever else they may wish to present. State involvement is further kept to a minimum since the students' presentations are completely uncensored by school officials. Thus, if a prayer is offered at the graduation ceremony, it is a student-initiated, student-led prayer. In other words, the prayer would be private speech endorsing religion, not government speech endorsing religion.

3. The Court recognizes that the Supreme Court's case load may account for their denying certiorari; however, the Supreme Court could have easily clarified its holding in *Lee* if it intended to ban all prayer.

4. Plaintiffs contend that "according to class standing" is not specific enough to preclude

school officials from choosing students who are known member of the LDS church and who would likely give a prayer. The Court finds Plaintiffs' argument unpersuasive given the facial challenge to the Graduation Policy. Additionally, Board Policy 711.2 requires that academic standing be used as the criteria for selecting students. (Ex. B., Resp. Mot. Summ. J. at 3.)

In conclusion, the limited role that the Defendants play in students' presentations does not bear the imprint of the state such that, should a student choose to engage in a religious activity, a reasonable student would not understand that it is the student's activity and not the state's. *Adler v. Duval County School Board,* 851 F.Supp. 446, 456 (M.D.Fla.1994). Therefore, the prohibited coercive effect is eliminated, such that the Graduation Policy does not violate the principles established in *Lee.* Furthermore, given the required printed disclaimer and the students' presumed knowledge of the Graduation Policy, the Court finds that a reasonable student would not perceive that Madison County School District was endorsing religion.

### B. *Lemon v. Kurtzman*

The traditional test for determining whether a state action violates the Establishment Clause is set forth in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). In order for a government's policy or statute not to violate the Establishment Clause, the policy or statute must (1) have a secular purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) avoid excessive governmental entanglement with religion. *Id.* at 612–13, 91 S.Ct. at 2112–12 (citations omitted). Although the Supreme Court in *Lee* did not apply the three-part *Lemon* test to determine whether the policy violated the Establishment Clause, the Court has never overruled *Lemon.*[5] Therefore, the Court will analyze the constitutionality of the Graduation Policy by applying the *Lemon* test.

#### 1. *Secular Purpose*

Plaintiffs argue that prayer is inherently religious; therefore, prayer cannot serve a secular purpose. The proper inquiry, however, is whether the Graduation Policy, not prayer, serves a secular purpose. Defendants contend that the purpose of the Graduation Policy was to protect the First Amendment rights of the students chosen to participate in the ceremony by secular means and to allow the students the equal opportu-

nity to give an uncensored speech of their choice. (Ex. B, Resp. Mot. Summ. J. at 4.)

The Court finds that the purpose stated by Defendants is an appropriate secular purpose and satisfies the first prong of *Lemon. See Adler,* 851 F.Supp. at 453 (a graduation policy that allowed the students to direct their graduation message without monitoring or review by school officials was found to serve the secular purpose of protecting the First Amendment rights of the students and treating equally religious speech). The Court also finds that the secular purpose of alleviating significant governmental interference with the ability of students who have earned the right to speak at graduation by virtue of their class standing to give an uncensored address, poem, reading, song, musical presentation, prayer or any other pronouncement of their choice would be served by the Graduation Policy. *See Hsu v. Roslyn Union Free Sch. Dist.,* 85 F.3d 839, 865 (2nd Cir.) (citing *Corporation of the Presiding Bishop v. Amos,* 483 U.S. 327, 335, 107 S.Ct. 2862, 2868, 97 L.Ed.2d 273 (1987)), *cert. denied,*—— U.S. ——, 117 S.Ct. 608, 136 L.Ed.2d 534 (1996). Finally, the Graduation Policy would allow the chosen students to solemnize such an important ceremony in the manner of their choice. *See Jones v. Clear Creek Indep. Sch. Dist.,* 977 F.2d 963, 966 (5th Cir.1992).

The Graduation Policy's secular purpose is furthered by the neutrality of the Policy. The Policy does not single out religious speech, rather prayer is merely one of many in a partial list of options from which the selected students may choose for their presentations. *Cf. Chandler v. James,* 958 F.Supp. 1550 (M.D.Ala.1997)(court found a non-secular purpose when the statute singled out religious speech even though the legislative history indicated a secular purpose).

#### 2. *Endorsement of Religion*

A policy or statute violates the Establishment Clause if, under the totality of the circumstances, a reasonable observer would perceive the policy or statute as conveying a

---

**5.** See *ACLU v. Black Horse Pike Regional Bd. Of Educ.,* 84 F.3d 1471, 1483–84 (3rd Cir.1996), for a discussion of the continued validity of the *Lemon* test.

message favoring or disfavoring religion. *Lemon,* 403 U.S. at 612, 91 S.Ct. at 2111. Again Plaintiffs focus on prayer, not the policy, and argue that its primary effect by nature is to advance religion. However the primary effect of the Graduation Policy is not to inhibit or endorse religion. The Policy does not require or direct that a prayer or other religious message occur at the ceremony. The Graduation Policy's neutral language towards religion and the explicit mandatory disclaimer supports this finding that a reasonable student would not perceive endorsement or coercion by the state should a student voluntarily choose to deliver a prayer. In fact, the Court finds persuasive Defendant's argument that the Policy is essential in order not to inhibit religion which would be a violation of the Establishment Clause.

### 3. *Excessive Entanglement*

The Policy passes the excessive entanglement prong because the Graduation Policy prohibits school officials from censoring the content of the students' presentations. School officials are only permitted to advise about appropriate language. Even Plaintiffs agree, however, that according to the Policy students need not follow any advice school administrators may give. (Mot. Summ. J. at 18.) Furthermore, because the Policy does not proscribe the type of prayer that may be given, school officials would not need to monitor the content of the prayer to determine if it is permissible should a student choose to deliver a prayer. *Cf. Chandler,* 958 F.Supp. 1550 (statute limited permissible speech to non-sectarian, non-proselytizing prayer; therefore, excessive entanglement found)

In conclusion, the Court finds that the Graduation Policy satisfies all three parts of the *Lemon* test and, therefore, does not violate the Establishment Clause.

### C. *Harris and Collins*

While not relevant to the analysis that the Graduation Policy does not violate the Establishment Clause pursuant to *Lee* and *Lemon,* the Court will address Plaintiff's remaining main arguments. Plaintiffs contend *Collins v. Chandler Unified Sch. Dist.,* 644 F.2d 759 (9th Cir.), *cert. denied,* 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981), is controlling. In *Collins,* the Ninth Circuit held the school district's policy allowing student council members to recite prayers and Bible verses at school assemblies, which were held during school hours but with attendance being optional, violated the Establishment Clause. The court reasoned that the invocation at assemblies served no apparent secular purpose and had a primary effect of advancing religion, especially given the "institutionally coercive setting of primary and secondary schools." *Id.* at 762. Excessive entanglement was also found because the school officials supervised the assemblies to guarantee voluntary participation and to maintain order. *Id.*

The Court finds that *Collins* is not controlling. *Collins* was an assemblies case, not a graduation prayer case. If a student were to deliver a prayer in *Collins,* the student would do so during school hours and on school property, and could do so on a periodic basis. Therefore, students would be more likely to perceive a government sponsored religious event. This degree of state involvement and the resultant coercive effect is absent in the present matter. The cases are further distinguishable because the policy in *Collins* was not neutral as to prayer as is the Madison County Policy.

Because the Ninth Circuit's opinion in *Harris* relies heavily on the rationale set forth in *Collins,* Plaintiffs' arguments also essentially follow the arguments raised in *Harris.* The Supreme Court, however vacated as moot the *Harris* decision after all of the plaintiffs graduated from high school. 515 U.S. 1154, 115 S.Ct. 2604, 132 L.Ed.2d 849 (1995). Although *Harris* has no precedential value, the Court cannot close its eyes entirely to one panel's view concerning the constitutionality of prayer at high school graduations. The Court, however, finds *Harris* to be distinguishable on its facts. The policy at issue in *Harris* was not neutral as to prayer and only relinquished control over the one aspect of graduation ceremony—whether an invocation/benediction should be given. In light of the neutrality of the Graduation Policy and the lack of state control over the major portion of the gradua-

tion ceremony, the Court finds that paying the costs of the ceremony alone is insufficient control such that the reasonable student would believe the school was endorsing any religious activity. This finding is true especially when the students are aware of the Policy, how the participating students are chosen, and the disclaimer printed in the program. Because the policy in *Harris* only concerned whether a prayer would be given, the Ninth Circuit found the policy violated the *Lemon* test. The Court has previously distinguished the policies and found Madison District's Policy satisfies all three prongs set forth in *Lemon*.

Although, no more controlling than *Collins*, the Court wishes to note the most recent Ninth Circuit case to analyze whether a school district's action violates the Establishment Clause is *Ceniceros v. Board of Trustees of the San Diego Unified Sch. Dist.*, 106 F.3d 878 (9th Cir.1997). In *Ceniceros*, the court emphasized that there is a crucial difference between government speech endorsing religion and private speech endorsing religion. *Id.* at 882. The court also considered that secondary school students were mature enough to understand the school was not endorsing religion by merely permitting a religious group to meet just as it permitted non-religious groups to meet and that the school could specifically disclaim any endorsement. *Id.*

### *CONCLUSION*

In summary, the Court finds that the Supreme Court did not ban all prayer at a high school graduation ceremony by its decision in *Lee v. Weisman*. Madison District's Policy that allows a student-initiated, student-led, uncensored address, poem, reading, song, musical presentation, prayer or any other pronouncement of their choosing by a student chosen to speak based on secular criteria does not violate the Establishment Clause. The state involvement in the selection of the student participants and general implementation of the Graduation Policy does not rise to the level of control such as to constitute an Establishment Clause violation. The Graduation Policy also passes all three prongs of the *Lemon* test in that the Policy serves a secular purpose, does not have a primary effect of endorsing or inhibiting reli-

gion, and does not excessively entangle the State with religion.

Simply put, the Court does not believe that such graduating seniors would be coerced into believing that a prayer or other religious expression given by a fellow student under the circumstances proscribed by the Graduation Policy is government speech endorsing religion.

### *ORDER*

For the reasons stated herein and the Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Docket No. 105) be **DENIED** and summary judgment be **GRANTED** in favor of Defendants.