177 F.3d 789
 99 Cal. Daily Op. Serv. 3661
 Jane DOE, on her own behalf and on behalf of her two
children; Doe 1; Doe 2, Plaintiffs-Appellants,
v.
MADISON SCHOOL DISTRICT NO. 321; Board of Trustees of
District No. 321; Jim Terry, Ann Hancock, John Bagley,
Norman Erickson, and Gary J. Summers, members of the Board;
and Dr. T.C. Mattocks, Defendants-Appellees.
 No. 97-35642.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1998.
Opinion Filed May 27, 1998.
Order Filed Jan. 22, 1999.
Rehearing En banc Granted and Opinion
and Order Withdrawn March 19, 1999.
Argued and Submitted April 22, 1999.
Filed May 19, 1999.
 
 Stephen L. Pevar, American Civil Liberties Union, Denver, Colorado, for plaintiffs-appellants.
 James B. Lynch, Lynch & Associates, PLLC, Boise, Idaho, for defendants-appellees.
 Steven T. McFarland, Christian Legal Society, Annandale, Virginia; Marc D. Stern, American Jewish Congress, New York City; and Steven K. Green, Americans United for Separation of Church and State, for amici curiae.
 Appeal from the United States District Court for the District of Idaho; Edward J. Lodge, District Judge, Presiding. D.C. No. CV-90-00518-EJL.
 Before: BROWNING, PREGERSON, REINHARDT, FERNANDEZ, RYMER, T.G. NELSON, THOMAS, SILVERMAN, GRABER, McKEOWN, and WARDLAW, Circuit Judges.
 GRABER, Circuit Judge.
 
 
 1
 In this Establishment Clause challenge to a school district's policy of permitting student prayers at high school graduations, we hold that plaintiffs lack standing and that this case presents no live controversy. We therefore vacate the district court's decision and direct the district court to dismiss the complaint.FACTUAL AND PROCEDURAL BACKGROUND
 
 
 2
 On November 16, 1990, two families filed this action alleging that defendants' longstanding policy of sponsoring prayers at their high school's graduation ceremonies violated the Establishment Clause of the First Amendment. See Doe v. Madison School Dist. No. 321, 7 F.Supp.2d 1110, 1113 (D.Idaho 1997). The complaint alleged that the children had standing to challenge the school's policy because they were students in defendants' school district. The complaint also alleged that their parents had standing to challenge the policy because they were taxpayers. The complaint requested declaratory and injunctive relief, but did not request damages. See id.
 
 
 3
 On March 18, 1991, the United States Supreme Court granted certiorari in a graduation prayer case. See Lee v. Weisman, 499 U.S. 918, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991). Plaintiffs asked the district court to stay this action pending the Supreme Court's decision. See Doe, 7 F.Supp.2d at 1113. The district court then administratively terminated the action without prejudice. See id.
 
 
 4
 On June 24, 1992, the Supreme Court decided Lee v. Weisman, 505 U.S. 577, 599, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), holding that the school's policy at issue there violated the Establishment Clause. In response to Lee, defendants adopted a new graduation policy, which states in part:
 
 
 5
 The school administration may invite graduating students to participate in high school graduation exercises according to academic class standing. A minimum of four (4) students may be asked to address the graduates at the graduation exercises....
 
 
 6
 ... Students selected to participate may choose to deliver an address, poem, reading, song, musical presentation, prayer or any other pronouncement of their choosing.
 
 
 7
 (Emphasis added.)
 
 
 8
 After defendants adopted the new policy, plaintiffs sought to reopen the case. The district court granted the request on January 29, 1993. Four months later, the District Court of Idaho decided another graduation prayer case, see Harris v. Joint Sch. Dist. No. 241, 821 F.Supp. 638 (D.Idaho 1993), which was appealed to the Ninth Circuit, see Harris v. Joint Sch. Dist. No. 241, 41 F.3d 447 (9th Cir.1994). The district court again administratively terminated the present action without prejudice, pending the final resolution of the Harris appeal. See Doe, 7 F.Supp.2d at 1113.
 
 
 9
 On November 18, 1994, the Ninth Circuit decided Harris and held that the school's policy violated the Establishment Clause. See Harris, 41 F.3d at 457-58. However, the Supreme Court granted certiorari and ordered that the Ninth Circuit's decision be vacated as moot. See Joint Sch. Dist. No. 241 v. Harris, 515 U.S. 1154, 115 S.Ct. 2604, 132 L.Ed.2d 849 (1995).
 
 
 10
 Once again, plaintiffs moved to reopen this action. The district court granted their motion on April 9, 1996. See Doe, 7 F.Supp.2d at 1113. Because the case had been pending for nearly six years, the district court questioned whether the anonymous plaintiffs still had standing to pursue the action. During an in camera hearing, plaintiffs revealed that one of the children was still a student in defendants' school district and that one of the parents, Jane Doe, was still a taxpayer in the municipality. The court thus held that the student-plaintiff had standing; the court declined to rule on whether the taxpayer also had standing.
 
 
 11
 Thereafter, plaintiffs moved for summary judgment. See id. Plaintiffs argued that defendants' current graduation policy was facially invalid. See id. at 1112. The district court disagreed, holding that the policy satisfied the coercion test from Lee and the three-part test from Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). See Doe, 7 F.Supp.2d at 1114-17. The district court therefore denied plaintiffs' motion for summary judgment and sua sponte granted summary judgment for defendants. See id. at 1118.
 
 
 12
 Plaintiffs appealed. On May 27, 1998, a panel of this court affirmed the district court's decision. See Doe v. Madison Sch. Dist. No. 321, 147 F.3d 832, 838 (9th Cir.1998). The panel suggested that Doe has standing as a taxpayer to challenge the school's policy. See id. at 834 n. 1. However, the panel did not rule on that issue, because it held that the student-plaintiff had standing. See id. Two days after the panel filed its decision, the student-plaintiff graduated from high school.
 
 
 13
 On June 19, 1998, a Ninth Circuit judge sua sponte asked that we take this case en banc and that we vacate the panel's decision as moot. The panel ordered the parties to respond to the issues raised by the judge's request. In response, plaintiffs argued that Doe has standing as a taxpayer but moved the panel to vacate its decision should the panel conclude that plaintiffs no longer have standing. See Doe v. Madison School Dist. No. 321, No. 97-35642, 1999 WL 23125, at * 1 (9th Cir.Jan.22, 1999). In a published order, with one judge dissenting, the panel held that Doe has standing as a taxpayer and that the case presents a live controversy. See id. at * 1-2. Thereafter, a majority of active Ninth Circuit judges voted to rehear both panel decisions en banc, and the decisions were withdrawn. See Doe v. Madison Sch. Dist. No. 321, 165 F.3d 1265 (9th Cir.1999).
 
 STANDING
 
 14
 Ordinarily, to prove an injury in fact under Article III of the Constitution, the plaintiff need only allege an injury that is "fairly traceable" to the wrongful conduct; the injury need not be financial. See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 642 n. 2 (2d Cir.1988). However, "taxpayer standing," by its nature, requires an injury resulting from a government's expenditure of tax revenues. See Clay v. Fort Wayne Community Schools, 76 F.3d 873, 879 (7th Cir.1996) ("Municipal taxpayer status does not confer standing absent some allegation by the plaintiffs of an illegal use of tax revenues."); Fuller v. Volk, 351 F.2d 323, 327 (3d Cir.1965) ("[T]he taxpayer must be shown to be suing to prevent a misuse of public funds for this is the only interest which a federal court can protect in a taxpayer's suit."). Doe argues that she has alleged such an injury, even though she cannot identify municipal expenditures occasioned solely by the only activity that she challenges--the graduation prayer. We are not persuaded.
 
 
 15
 Plaintiff has challenged the use of municipal and state (rather than federal) tax revenues. That being so, Doremus v. Board of Educ. of Borough of Hawthorne, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), controls the requirements for taxpayer standing in this case. See Cammack v. Waihee, 932 F.2d 765, 770 (9th Cir.1991) ("[T]he Doremus requirement of a pocketbook injury applies to municipal taxpayer standing as well as to state taxpayer standing."); Hoohuli v. Ariyoshi, 741 F.2d 1169, 1180 (9th Cir.1984) ("We are ... left with Doremus in its original form to guide us in questions of state taxpayer standing.").
 
 
 16
 In Doremus, a taxpayer challenged a state statute that provided for the reading of five verses from the Old Testament at the beginning of each school day. 342 U.S. at 430, 72 S.Ct. 394. The Supreme Court held that the taxpayer lacked standing, because the action was not a "good-faith pocketbook" challenge to the state statute. Id. at 434-35, 72 S.Ct. 394. To establish such a challenge, a plaintiff must demonstrate that the "activity is supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the school." Id. at 433, 72 S.Ct. 394. The taxpayer could not satisfy that requirement, because it was " 'neither conceded nor proved that the brief interruption in the day's schooling caused by compliance with the statute adds cost to the school expenses or varies by more than an incomputable scintilla the economy of the day's work.' " Id. at 431, 72 S.Ct. 394 (quoting the New Jersey Supreme Court decision under review in Doremus ). Instead, it was "apparent" that the taxpayer sought to litigate not a "direct dollars-and-cents injury but ... a religious difference," which is insufficient to support taxpayer standing. Id. at 434, 72 S.Ct. 394. Under Doremus, then, the taxpayer must demonstrate that the government spends "a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of." Id. at 434, 72 S.Ct. 394; see also Western Min. Council v. Watt, 643 F.2d 618, 632 (9th Cir.1981) (stating the same rule and following Doremus ); Taxpayers' Suits, A Survey and Summary, 69 Yale L.J. 895, 922 (1960) (Doremus "stands for the proposition that a state or municipal taxpayer does not have a direct enough interest for his suit to constitute an article III case or controversy unless the activity challenged involves an expenditure of public funds which would not otherwise be made.").
 
 
 17
 Applying the principles from Doremus, we have allowed taxpayers to challenge a state's declaration of Good Friday as a holiday, because "state and municipal tax revenues fund the paid holiday for government employees." Cammack, 932 F.2d at 771. Similarly, we have allowed taxpayers to challenge a state's disbursement of funds to a particular class of native inhabitants. See Hoohuli, 741 F.2d at 1180. In each of those cases, the plaintiffs alleged specific amounts of money that the government had spent solely on the unlawful activity.
 
 
 18
 By contrast, when a plaintiff has failed to allege that the government spent tax dollars solely on the challenged conduct, we have denied standing. In Reimers v. Oregon, 863 F.2d 630 (9th Cir.1988), we held that the plaintiff "cannot claim taxpayer standing on this appeal because he does not challenge the disbursement of state funds on the chaplain program at OSP. Instead, he complains about the requirement that a specific religion, Roman Catholicism, be represented on the chaplain staff." Id. at 632 n. 4 (citing Doremus, 342 U.S. at 433-35, 72 S.Ct. 394). Similarly, in Smith v. Denny, 417 F.2d 614, 614-15 (9th Cir.1969) (per curiam), dismissing appeal from 280 F.Supp. 651, 652 (E.D.Cal.1968), we relied on Doremus to hold that the taxpayers lacked standing to challenge a school's policy requiring daily recital of the pledge of allegiance.
 
 
 19
 Doe identifies no tax dollars that defendants spent solely on the graduation prayer, which is the only activity that she challenges. In fact, Doe acknowledges affirmatively that "[t]he prayers ... cost the state no additional expense." Doe instead alleges that defendants spent tax dollars on renting a hall, printing graduation programs, buying decorations, and hiring security guards. But those are ordinary costs of graduation that the school would pay whether or not the ceremony included a prayer. Therefore, those expenditures cannot establish taxpayer standing. This case is legally indistinguishable from Doremus, in which the school's expenditures for teachers' salaries, equipment, building maintenance, and the like were insufficient to confer taxpayer standing despite their indirect support of the Bible reading.
 
 
 20
 Doe nevertheless posits five reasons why she has standing to challenge defendants' policy, four of which relate to her claim of taxpayer standing. We consider them in turn.
 
 
 21
 First, Doe argues that, in Collins v. Chandler Unified Sch. Dist., 644 F.2d 759 (9th Cir.1981), this court allowed a taxpayer to pursue an action in similar circumstances. Doe's reliance on Collins is misplaced. This court in Collins never considered whether the plaintiff had standing. It is well settled that "the [c]ourt's exercise of jurisdiction ... is not precedent for the existence of jurisdiction." San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir.1996). Moreover, the plaintiff in Collins was the parent of a student at the defendant's high school. See Collins, 644 F.2d at 760. Parents have a right to direct the religious upbringing of their children and, on that basis, have standing to protect their right. See Grove v. Mead Sch. Dist. No. 354, 753 F.2d 1528, 1532 (9th Cir.1985) ("Appellants have standing to challenge alleged violations of the establishment clause of the First Amendment if they are directly affected by use of [the challenged book] in the English curriculum. Grove has standing as a parent whose right to direct the religious training of her child is allegedly affected.") (citation omitted); see also Zorach v. Clauson, 343 U.S. 306, 309 n. 4, 72 S.Ct. 679, 96 L.Ed. 954 (1952) ("No problem of this Court's jurisdiction is posed in this case since, unlike the appellants in Doremus, appellants here are parents of children currently attending schools subject to the released time program.") (citation omitted).
 
 
 22
 Next, Doe argues that "no court ... has interpreted Doremus so onerously." Doe is mistaken. Our holding today is in the mainstream.
 
 
 23
 In Friedmann v. Sheldon Community Sch. Dist., 995 F.2d 802 (8th Cir.1993), for instance, the Eighth Circuit held that a taxpayer lacked standing to challenge a school's policy allowing students to read an invocation or benediction at a graduation ceremony:
 
 
 24
 Plaintiffs have made no allegation that the state is spending money for religious purposes. They have not shown any state money going to the invocation or benediction, which is what they contend violates the Establishment Clause. They have shown no more than that state money is spent for diplomas, which certainly is not objectionable under the Establishment Clause.
 
 
 25
 Id. at 803.
 
 
 26
 In Doe v. Duncanville Independent School Dist, 70 F.3d 402 (5th Cir.1995), a taxpayer challenged a school's practice of permitting the Gideons to distribute Bibles at a public high school. The Fifth Circuit held that a taxpayer lacked standing to challenge that practice:
 
 
 27
 In order to establish state or municipal taxpayer standing to challenge an Establishment Clause violation, a plaintiff must not only show that he pays taxes to the relevant entity, he must also show that tax revenues are expended on the disputed practice.... We find no evidence in the record that even suggests that [the school district] expends any funds on the Gideons' Bible distribution. The Gideons themselves supply the Bibles and simply lay them on a table on the school foyer.... There is no evidence that the school district bought the table especially for the Bible distribution or that the table has been set aside for this sole purpose. In sum, there is nothing in the record that would allow us to conclude that [the school district] expends any funds or resources on its policy of permitting the Gideons to distribute Bibles to the fifth grade class.
 
 
 28
 Id. at 408.
 
 
 29
 In Gonzales v. North Township of Lake County, 4 F.3d 1412 (7th Cir.1993), the Seventh Circuit rejected a claim of taxpayer standing, because there was no evidence of an expenditure of tax revenue solely on the challenged activity:
 
 
 30
 In this case, however, the plaintiffs' claim is undercut by their inability to show that tax revenue is spent for the crucifix. The Township did not use government money to buy the crucifix (it was donated). The Township does not use government funds to maintain the crucifix (it just exists, maintenance free). And although Township funds are spent maintaining the Park areas surrounding the crucifix, this cost would be incurred with or without the presence of the crucifix. Without evidence of expenditure of tax revenues, the plaintiffs cannot claim standing by virtue of their taxpayer status.
 
 
 31
 Id. at 1416; see also Freedom From Religion Foundation, Inc. v. Zielke, 845 F.2d 1463, 1470 (7th Cir.1988) ("The allegedly unconstitutional activity in this case is the display of a monument of the Ten Commandments in Cameron Park, and the appellants concede that no tax money has been spent on this activity. Thus, Grams' possible status as a municipal taxpayer is irrelevant.").
 
 
 32
 In Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d 620 (1st Cir.1990), the First Circuit held that a taxpayer lacked standing to challenge a statute requiring that lawyers buy official stamps at government offices and affix them to court documents:
 
 
 33
 In order to establish state taxpayer standing, plaintiffs must show that the challenged activity involves "a measurable appropriation" or loss of revenue, and "a direct dollars-and-cents injury" to themselves, Doremus [, 342 U.S. at 434, 72 S.Ct. 394]. Plaintiffs have failed to make such a showing. The stamps are sold at government offices that exist for another purpose, and plaintiffs do not allege that additional employees are hired to handle the stamp business.
 
 
 34
 Id. at 639 (citations omitted); see also ACLU of Ga. v. Rabun County Chamber of Commerce, Inc., 698 F.2d 1098, 1106 n. 14 (11th Cir.1983) (noting that the plaintiffs did not claim taxpayer standing, because "[n]o expenditures have been made by the State of Georgia in connection with the cross except for the costs incurred in maintaining the park itself").
 
 
 35
 The Supreme Court's decision in Harris also implicitly supports our interpretation of Doremus. In Harris, students and a parent brought an action challenging a school's policy permitting graduation prayers. 41 F.3d at 448. After this court rendered its decision, the students graduated. Rather than allowing the parent to continue with the action based on taxpayer standing, the Supreme Court ordered the opinion vacated as moot. See Harris, 515 U.S. at 1154, 115 S.Ct. 2604. If the taxpayer in Harris lacked standing, Doe likewise lacks standing.
 
 
 36
 Third, Doe argues that the Supreme Court's decision in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), altered the Doremus test for taxpayer standing. The Court in Flast stated:
 
 
 37
 [A federal] taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. This requirement is consistent with the limitation imposed upon state-taxpayer standing in federal courts in [Doremus ].
 
 
 38
 Id. at 102, 88 S.Ct. 1942 (emphasis added).
 
 
 39
 As noted above, the Court in Doremus held that a taxpayer must show "a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of." 342 U.S. at 434, 72 S.Ct. 394. The Court in Flast simply used the term "incidental" to describe the type of indirect support that flows to an activity when the government does not spend "a measurable appropriation or disbursement" solely on the challenged activity. Nothing in Flast suggests that the Court intended to alter Doremus.
 
 
 40
 Indeed, we have applied Doremus repeatedly after Flast and have held expressly that "Flast does not appear to have affected the availability of standing for state taxpayers challenging state statutes.... We are thus left with Doremus in its original form." Hoohuli, 741 F.2d at 1179, 1180; see also Cammack, 932 F.2d at 770 (applying Doremus ); Reimers, 863 F.2d at 632 n. 4 (same); Western Min. Council, 643 F.2d at 632 (same); Smith, 417 F.2d at 614-15 (same).[1]
 
 
 41
 Fourth, Doe argues that Doremus applies only to continuing constitutional violations rather than to "discrete, once-a-year event[s]" such as graduation ceremonies. With once-a-year events, Doe maintains, we should view the event in its entirety when determining taxpayer standing.
 
 
 42
 Nothing in Doremus suggests that the Supreme Court intended to limit its application to continuing violations. To the contrary, Doe's suggested limitation on Doremus is inconsistent with the principle underlying taxpayer standing. Taxpayer standing protects against only one type of injury, namely, the "misuse of public funds." See Fuller, 351 F.2d at 327. If a plaintiff identifies no public funds that were spent solely on the challenged activity, then the plaintiff has not alleged a taxpayer injury.[2]
 
 
 43
 Finally, Doe suggests that she has standing, because she finds the prayers so offensive that she would forego attending defendants' graduation ceremonies. However, Doe's children all have graduated from the schools in defendants' district, and she does not claim that she will attend another graduation ceremony in the future. Thus, Doe does not allege a direct injury resulting from her inability to attend a public event. Cf. Hewitt v. Joyner, 940 F.2d 1561, 1564 (9th Cir.1991) ("We affirm the district court's determination that the plaintiffs have standing to challenge the County's ownership of the park. Other circuits have recognized that when a plaintiff alleges that the government has unconstitutionally aligned itself with religion, standing may be based on finding that the plaintiff has been injured due to his or her not being able to freely use public areas.").
 
 
 44
 In summary, Doe does not allege that any tax dollars are spent solely on the graduation prayer, which is the only activity that she claims is unlawful. She therefore lacks standing as a taxpayer. She also fails to allege that she plans to attend future graduation ceremonies and therefore lacks standing as a person deprived of the right freely to attend public events.
 
 LIVE CONTROVERSY
 
 45
 We next consider whether this controversy remains live for any other reason. Article III limits our jurisdiction to "cases or controversies." See Public Utilities Com'n v. Federal Energy Regulatory Comm'n, 100 F.3d 1451, 1458 (9th Cir.1996) ("The jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution.") (citation and internal quotation marks omitted).
 
 
 46
 No one disputes that the student-plaintiff presented an actual case or controversy when the complaint was filed. However, a party must maintain a live controversy through all stages of the litigation process. See Di Giorgio v. Lee (In re Di Giorgio), 134 F.3d 971, 974 (9th Cir.1998) ("To qualify for adjudication in federal court, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation and internal quotation marks omitted). If an action or a claim loses its character as a live controversy, then the action or claim becomes "moot," and we lack jurisdiction to resolve the underlying dispute. See Ruiz v. City of Santa Maria, 160 F.3d 543, 549 (9th Cir.1998) ("Generally, an action is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (citation and internal quotation marks omitted), --- U.S. ----, ---- S.Ct. ----, ---- L.Ed.2d ---- (1999); Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 853-54 (9th Cir.1985) ("A case, or an issue in a case, is considered moot if it has lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.") (citations and internal quotation marks omitted).
 
 
 47
 After the panel rendered its decision, the student-plaintiff graduated from defendants' high school. Thus, the student-plaintiff already has suffered any injury that would result from the alleged forced participation in prayers that were part of the student-plaintiff's graduation ceremony. Because we cannot remedy the student-plaintiff's injury with injunctive or declaratory relief, the student-plaintiff's claims for those forms of relief are moot. See American Rivers v. National Marine Fisheries Serv., 126 F.3d 1118, 1123 (9th Cir.1997) ("If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed.").
 
 
 48
 A student's graduation moots claims for declaratory and injunctive relief, but it does not moot claims for monetary damages. See Ceniceros v. Board of Trustees of the San Diego Unified Sch. Dist., 106 F.3d 878, 879 n. 1 (9th Cir.1997) ("Ceniceros has graduated from high school since the time this action was filed. Consequently, her claims for injunctive and declaratory relief are moot, and only her claim for monetary damages survives."); see also O'Neal v. City of Seattle, 66 F.3d 1064, 1066 (9th Cir.1995) ("O'Neal's claim for damages saves this case from a complete mootness bar."). However, the student-plaintiff has not requested damages.
 
 
 49
 Although the student-plaintiff has not alleged any injury that we ordinarily would have the power to remedy, we might have jurisdiction over the appeal nonetheless if a mootness exception applies. See Public Utilities Com'n, 100 F.3d at 1458-61 (so holding). Issues that are "capable of repetition, yet evading review" present an exception to the mootness doctrine. See American Rivers, 126 F.3d at 1123. That exception, however, is limited to "extraordinary cases" in which (1) "the duration of the challenged action is too short to be fully litigated before it ceases," and (2) "there is a reasonable expectation that the plaintiffs will be subjected to the same action again." Id. at 1124 (citation and internal quotation marks omitted). The student-plaintiff here satisfies neither requirement.
 
 
 50
 First, although we acknowledge that graduation prayer cases are difficult to litigate fully, such challenges are not "so inherently limited in duration that the action will become moot before the completion of appellate review." Di Giorgio, 134 F.3d at 975; see also DeFunis v. Odegaard, 416 U.S. 312, 319, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) ("[J]ust because this particular case did not reach the Court until the eve of the petitioner's graduation from law school, it hardly follows that the issue he raises will in the future evade review."). Indeed, several recent cases demonstrate that students can litigate graduation prayer challenges fully. See Lee, 505 U.S. at 599, 112 S.Ct. 2649 (fully litigating a graduation prayer challenge); ACLU of New Jersey v. Black Horse Pike Regional Bd. of Educ., 84 F.3d 1471, 1488 (3d Cir.1996) (same); Jones v. Clear Creek Independent School Dist., 977 F.2d 963, 972 (5th Cir.1992), cert. denied, 508 U.S. 967, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993) (same).
 
 
 51
 Second, the student-plaintiff here will not graduate from high school again. Thus, the student-plaintiff never again will be compelled to participate in a prayer at his or her high school graduation ceremony. See, e.g., DeFunis, 416 U.S. at 319, 94 S.Ct. 1704 ("DeFunis will never again be required to run the gantlet of the Law School's admission process, and so the question is certainly not 'capable of repetition' so far as he is concerned.").
 
 
 52
 A defendant's voluntary cessation of the alleged unlawful conduct also could present an exception to the mootness doctrine if "there is [a] reasonable expectation that the wrong will be repeated." Public Utilities Com'n, 100 F.3d at 1460 (citation and internal quotation marks omitted). Defendants have not voluntarily stopped using the graduation policy and, therefore, this mootness exception does not apply.
 
 
 53
 We also have recognized an exception to the mootness doctrine when the plaintiff would suffer collateral legal consequences from the present action. See id. ("Another exception to the mootness doctrine applies to situations where a petitioner would suffer collateral legal consequences if the actions being appealed were allowed to stand."). The student-plaintiff will suffer no such consequences, however.
 
 
 54
 In conclusion, the student-plaintiff's graduation mooted the requests for injunctive and declaratory relief, and no mootness exception applies. In the circumstances, the appeal no longer presents a live controversy as required by Article III of the Constitution.
 
 VACATUR
 
 55
 We are left with a district court's decision that no one can challenge.[3] When mootness occurs in a civil action due to happenstance, the established practice in federal court is to vacate the decision below. See Arizonans for Official English v. Arizona, 520 U.S. 43, 71, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("When a civil case becomes moot pending appellate adjudication, the established practice ... in the federal system ... is to reverse or vacate the judgment below and remand with directions to dismiss.... Vacatur is in order when mootness occurs through happenstance--circumstances not attributable to the parties.") (citation and internal quotation marks omitted) (alterations in original); Mayfield v. Dalton, 109 F.3d 1423, 1427 (9th Cir.1997) ("In deciding whether to vacate a prior judgment in a case rendered nonjusticiable, the pivotal question is whether the party seeking relief from the judgment below caused the [nonjusticiability] by voluntary action.... Because in this case it was not plaintiffs-appellants who mooted the appeal, [United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950)] applies and vacatur is appropriate.") (citation and internal quotation marks omitted) (alterations in original); Dilley v. Gunn, 64 F.3d 1365, 1371 (9th Cir.1995) ("If Dilley's transfer from Calipatria was due to 'happenstance,' the district court's order granting injunctive relief should be vacated under Munsingwear.").
 
 
 56
 Here, mootness occurred through happenstance, the passage of time. Following the established practice in the federal system and pursuant to 28 U.S.C. § 2106, we vacate the district court's decision and direct the district court to dismiss the complaint.
 
 
 57
 VACATED AND REMANDED WITH INSTRUCTIONS TO DISMISS THE COMPLAINT.
 
 
 
 [1]
 Other circuits, similarly, have continued to apply the principles from Doremus after Flast. See pp. 795-96, above (citing cases that apply the reasoning from Doremus); see also Clay v. Fort Wayne Community Schools, 76 F.3d 873, 879 (7th Cir.1996) (applying Doremus ); District of Columbia Common Cause v. District of Columbia, 858 F.2d 1, 4-5 (D.C.Cir.1988) (same); Ronald D. Rotunda and John E. Nowak, Treatise on Constitutional Law: Substance and Procedure, § 2.13, p. 201 n. 177 (2d ed. 1992) ("Doremus is apparently still law after Flast.")
 
 
 [2]
 We note, too, that other circuits have applied the reasoning from Doremus to once-a-year events. See, e.g., Friedmann, 995 F.2d at 803 (requiring a direct expenditure of public funds solely on a graduation prayer to support taxpayer standing)
 
 
 [3]
 As noted above, the panel's decision on appeal was withdrawn when we voted to rehear this case en banc. See Doe, 165 F.3d at 1265