

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-3-2001

# ACLU NJ v. Twp of Wall

Precedential or Non-Precedential:

Docket 00-2075

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"ACLU NJ v. Twp of Wall" (2001). *2001 Decisions.* Paper 66.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/66

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 3, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2075

ACLU-NJ, AMERICAN CIVIL
LIBERTIES UNION OF NEW JERSEY,
on Behalf of its Members,
ELEANOR MILLER; RANDY MILLER,

v.

TOWNSHIP OF WALL

ACLU-NJ, American Civil
Liberties Union of New Jersey;
Eleanor Miller; Randy Miller,

      Appellants

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(Dist. Court No. 99-cv-00751)
District Court Judge: Alfred M. Wolin

Argued on January 22, 2001

Before: NYGAARD, ALITO and ROSENN, Cir cuit Judges.

(Opinion Filed: April 3, 2001)

LEWIS H. ROBERTSON
231 Maple Ave.
Post Office Box Y
Red Bank, NJ 07701

RONALD K. CHEN (Argued)
Rutgers University
Constitutional Litigation Clinic
123 Washington St.
Newark, NJ 17102

 Counsel for Appellants

KEVIN H. HASSON (Argued)
The Becket Fund for Religious
 Liberty
1350 Connecticut Ave., N.W.,
 Suite 605
Washington, DC 20036

BETH POLLACK
McLaughlin Bennett Gelson &
 Cramer
1305 Campus Parkway
Monmouth Shores Corporate Park
Neptune, NJ 07753-6819

 Counsel for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

This is an appeal from a District Court decision holding that a holiday display exhibited by Wall T ownship, New Jersey, did not violate the Establishment Clause of the First Amendment. We hold that the plaintiffs lack standing under Article III to challenge the display to which they now object, and we therefore vacate the decision of the District Court and remand for dismissal of the complaint.

I.

Since at least 1997, Wall Township has exhibited a holiday display near the entrance to the municipal building

housing much of the Township's government. The individual plaintiffs in this case, Eleanor and Randy Miller, are taxpayers and residents of the T ownship and members of the organizational plaintiff, the American Civil Liberties Union of New Jersey ("ACLU"). The Millers fr equently visit the complex in which the municipal building sits for a variety of personal and professional reasons.

In 1998, while visiting the complex, the Millers observed the Township's holiday display and found it objectionable. The display consisted principally of a creche with traditional figures, a lighted evergr een tree, two decorated urns that are part of the complex, and four snowman banners attached to light posts at the complex.

On February 18, 1999, plaintiffs brought suit in the United States District Court for New Jersey, alleging that the display violated the United States and New Jersey Constitutions. Plaintiffs sought declaratory and injunctive relief.

In July 1999, the Township moved to dismiss plaintiffs' complaint for lack of standing. The Court denied defendant's motion on October 5, 1999, finding that the plaintiffs possessed standing as a result of their "direct personal contact with the government-sponsor ed religious display" that has made them "feel less welcome, less accepted, tainted and rejected."

In December 1999, the Township again exhibited a holiday display. The 1999 display was differ ent than the 1998 display, however. In addition to a cr eche, the 1999 display included a donated menorah, candy cane banners rather than the less prominent snowman banners, a larger evergreen tree, and two signs r eading: (1) "Through this and other displays and events through the year , Wall Township is pleased to celebrate our American cultural traditions, as well as our legacy of diversity and freedom" and (2) "Merry Christmas Happy Hanukkah." Second Affidavit of Randy Miller PP 5-6, 10-11 ("Mr. Miller II") (Appendix at A44-A45 ("App.")); Declaration of Joseph Verruni PP 5-6, 8 (App. at A59-A60); see also Declaration of Michael D. Fitzgerald PP 3-4 (App. at A53); Declaration of Michael D. Fitzgerald PP 3-4 (App. at A81-A82).

3

Mr. Miller observed the modified display on December 2, 1999. On December 20, 1999, plaintiffs moved for a temporary restraining order and pr eliminary injunction. At a December 23, 1999 hearing, the Court denied plaintiffs' motion for a restraining order due to plaintiffs' delay in seeking relief and, pursuant to Fed. R. Civ. P . Rule 65, consolidated plaintiffs' motion for pr eliminary injunction with a future trial on the merits.

In early 2000, the Township moved for summary judgment. The District Court invited and received additional evidence from the parties, including a January 26, 2000 Township resolution directing the purchase of "twig-style reindeer and a sleigh" to add to the display and formalizing the future components of the display.

Based on the evidence submitted and without a for mal trial, the District Court ruled on the merits of plaintiffs' suit on June 22, 2000. The Court found that the T ownship's holiday display, as modified and memorialized in the 2000 resolution, did not violate the federal or New Jersey Constitutions and entered judgment for the T ownship.

Plaintiffs appealed, contesting the District Court's consideration of the January 2000 resolution and the conclusion that the Township's display is constitutional. In their written and oral arguments, plaintif fs made clear that they seek relief only as to the 1999 display.

II.

On appeal, the Township again asserts that plaintiffs lack standing to challenge the constitutionality of the holiday display. We review the issue of standing de novo. See Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000); Stehney v. Perry, 101 F.3d 925, 929 (3d Cir. 1996).

The standing requirement implicit in Article III "is not merely a troublesome hurdle to be overcome if possible so as to reach the `merits' of a lawsuit," but an integral part of the governmental charter established by the Constitution. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 476 (1982). If plaintiffs do not possess Article III standing, both

the District Court and this Court lack subject matter jurisdiction to address the merits of plaintif fs' case. See id. at 475-76; Warth v. Seldin, 442 U.S. 490, 498 (1975); Morris v. Horn, 187 F.3d 333, 344 (3d Cir. 1999).

Plaintiffs bear the burden of proving standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Plaintiffs must carry that burden "in the same way as any other matter on which the plaintiff bears the bur den of proof, i.e., with the manner and degree of evidence r equired at successive stages of the litigation." Lujan , 504 U.S. at 561; see also FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996). As this appeal comes to us after full litigation on the merits, plaintiffs must establish standing in the same manner as would be required to prevail on the ultimate merits of their case. Cf. Gonzales v. North Township of Lake County, 4 F.3d 1412, 1415 (7th Cir. 1993) ("At the summary judgment stage, the plaintiff must produce evidence [of standing] in the form of Fed. R. Civ. P. 56(e) affidavits or documents . . . .").

The ACLU for its part rests its standing on the interests of its members, the Millers, rather than on an independent injury to the organization. As a result, the ACLU's ability to sue is strictly dependent on that of the Millers. See Valley Forge, 454 U.S. at 476 n.14; Fr eedom from Religion Found., Inc. v. Zielke, 845 F.2d 1463, 1469 (7th Cir. 1988); American Civil Liberties Union v. City of St. Charles, 794 F.2d 265, 267 (7th Cir. 1986). The Millers claim standing based on their status as municipal taxpayers or on non-economic injuries resulting from the display. As we explain below, the Millers failed to establish standing in either capacity.

A.

The Supreme Court recognized in Dor emus v. Board of Education of Hawthorne, 342 U.S. 429, 434 (1952), that a municipal taxpayer may possess standing to litigate"a good-faith pocketbook action." See also Doe v. Beaumont Indep. Sch. Dist., 173 F.3d 274, 282 (5th Cir. 1999) ("[T]o establish . . . municipal taxpayer standing . . . a plaintiff must show only that (1) he pays taxes to the r elevant

5

entity, and (2) tax revenues are expended on the disputed practice."); Clay v. Fort Wayne Community Sch., 76 F.3d 873, 879 (7th Cir. 1996) (acknowledging the good-faith pocketbook requirement adopted by Doremus for municipal taxpayer standing); United States v. New York, 972 F.2d 464, 470 (2d Cir. 1992) ("[M]unicipal taxpayers have standing to challenge allegedly unlawful municipal expenditures.") (collecting cases); Cammack v. Waihee, 932 F.2d 765, 770 (9th Cir. 1991) ("[T]he Doremus requirement of a pocketbook injury applies to municipal taxpayer standing . . . .") (collecting cases); District of Columbia Common Cause v. District of Columbia, 858 F.2d 1, 4 (D.C. Cir. 1988) (same).[1]

The plaintiffs in Doremus were state and municipal taxpayers who challenged a state law mandating Bible reading in public schools. Doremus, 342 U.S. at 430–31, 433. The Supreme Court found that the plaintiffs failed to establish a direct monetary injury that would confer standing to raise such a challenge, as they did not allege that the Bible reading was "supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the school." Id. at 433. Likewise, the plaintiffs failed to provide any "information . . . as to what kind of taxes" they paid or to aver "that the Bible reading increase[d] any tax they [did] pay or that as taxpayers they are, will, or possibly can be out of pocket because of" the activity. Id. In short, the plaintiffs failed to establish more than a potential de minimis drain on tax revenues due to the challenged reading. See id. at 431–32; see also Doe v. Madison Sch. Dist. No. 321, 177 F.3d 789, 794 (9th Cir. 1999) (en banc) (noting that "the school's expenditures for teachers' salaries, equipment, building maintenance, and the like were insufficient to confer taxpayer standing[in Doremus]

_____

1. The standing requirements for federal taxpayers are more stringent than those for municipal taxpayers. See Massachusetts v. Mellon, 262 U.S. 447, 486–87 (1923); Flast v. Cohen, 392 U.S. 83, 102–03 (1968); Beaumont Indep. Sch. Dist., 173 F.3d at 282; Board of Educ. of Mt. Sinai Sch. Dist. v. New York State Teachers Retirement Sys., 60 F.3d 106, 110 (2d Cir. 1995); Hawley v. City of Cleveland, 773 F.2d 736, 741–42 (6th Cir. 1985); District of Columbia Common Cause, 858 F.2d at 3–4, 6–7.

despite their indirect support of the Bible r eading"). As a result, the plaintiffs lacked standing to sue.

The same result has obtained in cases in other courts of appeals. In Doe v. Duncanville Independent School District, for example, the plaintiffs failed to show that the defendant school district spent any money on the distribution of Bibles by the Gideon Society in public school. Doe v. Duncanville Indep. Sch. Dist., 70 F.3d 402, 408 (5th Cir. 1995). The Gideons supplied the Bibles and placed them on a table in the school foyer. Id. "[N]o school district employee handle[d] the Bibles," and "[t]her e [was] no evidence that the school district bought the table especially for the Bible distribution or that the table [had] been set aside for [that] sole purpose." Id. Recognizing that "[i]n order to establish . . . municipal taxpayer standing . . . , a plaintif f must not only show that he pays taxes to the relevant entity, he must also show that tax revenues are expended on the disputed practice," the Fifth Circuit found that plaintiffs lacked standing to challenge the Bible distribution. Id. at 408–09.

The Seventh Circuit reached the same conclusion in Freedom From Religion Foundation, Inc. v. Zielke, 845 F.2d at 1466, in which plaintiffs sought to enjoin the display of a monument of the Ten Commandments in a park owned and maintained by the defendant city. While the city had spent money in 1899 to acquire the property for the park, the city had not spent any funds on maintaining the donated monument. Id. at 1465–66, 1470. The Seventh Circuit noted that "[a] plaintif f 's status as a municipal taxpayer is irrelevant for standing purposes if no tax money is spent on the allegedly unconstitutional activity" and concluded that plaintiffs lacked standing to sue. Id. at 1470; see also Clay, 76 F.3d at 879 ("Municipal taxpayer status does not confer standing absent some allegation by the plaintiffs of an illegal use of tax r evenues."); Gonzales, 4 F.3d at 1416 ("Without evidence of expenditure of tax revenues [on a donated, maintenance-fr ee crucifix in a public park], the plaintiffs cannot claim standing" as taxpayers.); City of St. Charles, 794 F .2d at 267–68 (Plaintiffs' taxpayer status was irrelevant where there was

7

no allegation "that any part of the expense of the [disputed display of a lighted] cross [was] paid for out of tax revenues.").2

In this case, plaintiffs have provided uncontradicted testimony that they pay property taxes to the Township. Affidavit of Eleanor Miller P 1 ("Mrs. Miller") (App. at A17); Affidavit of Randy Miller P 1 ("Mr. Miller I") (App. at A20). However, as in the cases above, plaintiffs have failed to establish that the Township has spent any money, much less money obtained through property taxes, on the religious elements of the 1999 display.

Plaintiffs did allege, "[o]n information and belief," that "the [1998] Nativity display was erected and maintained with public funds including tax revenues collected by the Township." Complaint P 35 (App. at A6). However, the Township denied this allegation and plaintiffs presented no evidence on the issue. Answer P 35 (App. at A). Moreover, the record establishes that both the Nativity display and the menorah were donated to the Township. Complaint P 34 (App. at A6); Answer P 34 (App. at A38); Declaration of Joseph Verruni P 5 (App. at A59). While the Township thus owns the Nativity display, and presumably the menorah, and the overall display is set up with defendant's support, direction and/or approval, the Township denies that it "maintains" the display. Complaint PP 34, 41 (App. at A6); Answer PP 34, 41 (App. at A38–A39). Plaintiffs have thus failed to establish an expenditure on the challenged elements of the display.

Even if we were to assume that the holiday display was erected by paid Township employees, there is no indication that the portion of such expenditure attributable to the challenged elements of the display would have been more

_____

2. For cases in which other circuits have recognized that municipal taxpayers lack standing to sue where there is no evidence of expenditure, see Madison School District No. 321, 177 F.3d at 794, 797 (Even though tax money was allegedly spent on the "ordinary costs of graduation," such as printing programs, plaintiff lacked standing to challenge graduation prayer where she conceded that no tax funds were "spent solely on" that activity.), and District of Columbia Common Cause, 858 F.2d at 4 ("[M]unicipal taxpayers do not have standing when no tax moneys are spent.")

than the de minimis expenditure that was involved in the Bible reading in Doremus. See Doremus v. Board of Educ. of Hawthorne, 71 A.2d 732, 733 (N.J. Super . Ct. Law Div. 1950) (under statute in question Bible reading was to be performed by teacher or principal); Madison Sch. Dist. No. 321, 177 F.3d at 794. Similarly, we cannot simply assume that the Township expends more than a de minimis amount in lighting the religious elements of the display. Cf. City of St. Charles, 794 F.2d at 267–68 (Lighting for challenged cross was "put up by the city's volunteer firemen, on their own time, and the minuscule cost of the electricity required to keep the lights lit [was] defrayed by voluntary contributions from city residents.").

As a result, we cannot find that plaintif fs have carried their burden of proving an expenditur e of revenues to which they contribute that would make their suit"a good–faith pocketbook action." Doremus, 342 U.S. at 434; see also Fuller v. Volk, 351 F.2d 323, 327 (3d Cir. 1965) (requiring municipal taxpayers to show "a good–faith pocketbook action"). Consequently, plaintif fs cannot invoke federal jurisdiction as taxpayers.

B.

Nor have plaintiffs established standing based on non-economic injuries suffered as a r esult of the challenged 1999 display. The Millers provided substantial evidence regarding their contact with and r eaction to the 1998 display. The Millers testified that they fr equently visit the municipal complex to fulfill personal, professional, and political responsibilities. Mrs. Miller PP 3–9 (App. at A17–A18); Mr. Miller I PP 3–14 (App. at A20–A21). Both saw the 1998 holiday display and found it objectionable. Mrs. Miller PP 9–10 (App. at A18); Mr. Miller IPP 14–15 (App. at A22). Both were troubled by the display's placement near the entrance of the municipal building, the seat of the Township's government. Mrs. Miller P 10 (App. at A18); Mr. Miller I P 15 (App. at A22).

Mr. Miller believed the 1998 display to be a demonstration by the Township "that it . . . has a special, close relationship with Christian religious institutions." Mr.

9

Miller I P 16 (App. at A22). He felt that"governmental entities . . . have no business erecting r eligious displays, let alone a religious display of only one r eligion in a place which is symbolic of the Township's power ." Mr. Miller I P 17 (App. at A22). He resented "the T ownship appearing to . . . act as a representative of the Catholic religion [of which he is an adherent] in erecting the Nativity display." Mr. Miller I P 18-19 (App. at A22). To him,"the display [was] an affront to and rejection of [his] political and philosophical beliefs and an intrusion into the area of [his] religion." Mr. Miller I P 20 (App. at A22).

Similarly, Mrs. Miller interpreted the 1998 display as an endorsement of the Christian religion. Mrs. Miller P 10 (App. at A18). As one who believes in the pr ohibition against establishment of religion, she found the display to be "an arrogant announcement that Wall Township is a Christian municipality--not one which is open to diversity and includes all of its residents on an equal basis." Mrs. Miller PP 11-12 (App. at A18-A19). Mor eover, as one who does not have a "religious background" but who is "not anti-religious," she "believe[s] that religion plays an important part in society and that our society should be tolerant of diverse religious philosophies and practices as well as those who choose not to practice any r eligion at all." Mrs. Miller P 13 (App. at A19). She viewed"the Township's Nativity display as both a rejection of [her] political views and of [her] beliefs respecting the necessity for religious diversity and inclusivity." Mrs. Miller P 14 (App. at A19). In conclusion, the display made her "feel less welcome in the community, less accepted and tainted in some way." Mrs. Miller P 15 (App. at A19).

Before the Millers' suit was expanded to include the 1999 display, the District Court found that this evidence sufficiently established the Millers' standing to raise their constitutional claims. The question is a close one.

In Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., the plaintiffs, "Americans United for Separation of Church and State, Inc. . . . and four of its employees, learned of the conveyance [of federally-owned land in Pennsylvania to Valley Forge Christian College] through a news release." 454 U.S. at

469. The standing of the organization was dependent on that of the employee-plaintiffs, see id. at 476 n.14, and the Supreme Court found that these named plaintif fs, who lived in Virginia and Maryland, see id. at 487, lacked standing. The Court wrote:

> Although respondents claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional err or, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III, even though the disagr eement is phrased in constitutional terms.

454 U.S. at 485-86 (emphasis added).

The Court added:

> We simply cannot see that respondents have alleged an injury of any kind, economic or otherwise, sufficient to confer standing. Respondents complain of a transfer of property located in Chester County, Pa. The named plaintiffs reside in Maryland and V irginia; their organizational headquarters are located in Washington, D.C. They learned of the transfer through a news release. Their claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court. The federal courts were simply not constituted as ombudsmen of the general welfare.

454 U.S. at 486-87 (footnotes omitted).

It can be argued that the Millers' alleged injuries from observance of the 1998 display--Mr. Miller's resentment, Mr. Miller I P 19 (App. at A22), and Mrs. Miller's feelings of being "less welcome in the community, less accepted and tainted in some way," Mrs. Miller P 15 (App. at A19)--are tantamount to the "psychological consequence[s] . . . produced by observation of conduct with which one disagrees," Valley Forge , 454 U.S. at 485, and that these psychological consequences are insufficient to establish standing.

11

Decisions of other circuits, however, suggest that the Millers' evidence might be sufficient to establish standing with respect to the 1998 display because, unlike the named plaintiffs in Valley Forge , the Millers had personal contact with the display. The Tenth Circuit, for example, found standing to challenge the religious element of a city logo displayed in the city hall, on city vehicles, and on city stationary where the plaintiff had "direct, personal contact" with the logo on a daily basis and was offended and intimidated by it. Foremaster v. City of St. George, 882 F.2d 1485, 1490–91 (10th Cir. 1989). Similarly, the Eleventh Circuit found that plaintiffs who felt like second class citizens because the city seal contained the wor d "Christianity" had standing to sue wher e they received correspondence and documents bearing the seal. Saladin v. City of Milledgeville, 812 F.2d 687, 692–93 (11th Cir. 1987). Plaintiffs' "direct contact with the offensive conduct" served to distinguish the Eleventh Circuit plaintif fs from the plaintiffs in Valley Forge . Id. at 692.

We need not decide whether the Millers' evidence would be sufficient to confer standing to challenge the 1998 display, however, because plaintiffs do not press their challenge to that display on appeal. Plaintif fs seek relief only as to the modified display exhibited in 1999.

We do not believe that the Millers' pr offered evidence would establish standing to challenge the 1999 display under the law of any circuit. The recor d contains no evidence that Mrs. Miller even saw the 1999 display. Cf. Valley Forge, 454 U.S. at 486–87 (plaintiffs lived far from the challenged conveyance and learned of it through the media). While Mr. Miller testified that he went to the municipal complex and observed the Township's 1999 display, it is unclear whether he did so in or der to describe the display for this litigation or whether, for example, he observed the display in the course of satisfying a civic obligation at the municipal building. Mr. Miller II PP 1–2 (App. at A43); cf. Suhre v. Haywood County, 131 F.3d 1083, 1090 (4th Cir. 1997) (recognizing standing of plaintiff who, "as a participant in local government," had direct contact with a Ten Commandments display in county courtroom). Moreover, neither Mr. Miller nor Mrs. Miller provided

12

testimony regarding their reaction to the 1999 display, which was significantly different fr om the display in 1998.

While we assume that the Millers disagreed with the 1999 display for some reason, we cannot assume that the Millers suffered the type of injury that would confer standing. As noted, "the party invoking federal jurisdiction bears the burden of establishing [standing] . . . . in the same way as any other matter on which the plaintif f bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of the litigation." Lujan, 504 U.S. at 561. Mere assumption would not satisfy the plaintiffs' burden to prove an element of their cause of action at this stage of the litigation and it cannot satisfy their burden to prove standing. Accor dingly, we find that plaintiffs have failed to establish standing to challenge the Township's 1999 display. The order of the District Court is therefore vacated, and the case is r emanded for the District Court to dismiss for lack of jurisdiction.

While the lack of standing prevents plaintif fs from obtaining a ruling from a federal court r egarding the constitutionality of the Township's past display--which apparently will not be exhibited again--it does not prevent plaintiffs from attempting to challenge any future display that plaintiffs believe violates constitutional principles.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

13